Formatted for Electronic Distribution                                                                                          For Publication

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

Filed & Entered
On Docket
August 31, 2020

In re:
    Berton R. Frye and
    Virginia R. Frye,
        Debtors.

Chapter 7
Case # 15-10242

Douglas J. Wolinsky, Trustee,
        Plaintiff,
    v.
Berton R. Frye, Virginia Frye,
Northeastern Vermont
Development Association, Inc.,
Internal Revenue Service,
Vermont Community Loan Fund,
Inc., and Northern Community
Investment Corporation,
        Defendants.

Adversary Proceeding
# 19-01009

## MEMORANDUM OF DECISION
### GRANTING INTERNAL REVENUE SERVICE'S MOTION FOR SUMMARY JUDGMENT AND DENYING JOINT CROSS-MOTION FOR SUMMARY JUDGMENT OF VERMONT COMMUNITY LOAN FUND AND NORTHERN COMMUNITY INVESTMENT CORPORATION

    The three remaining parties to this adversary proceeding – the Internal Revenue Service (the "IRS"), Vermont Community Loan Fund, Inc. ("VCLF"), and Northern Community Investment Corporation ("NCIC") (collectively, the "Remaining Parties") – each claim an interest in certain insurance proceeds (the "Insurance Proceeds"). The IRS asserts it is entitled to all of these proceeds based on the priority of its federal tax liens, and VCLF and NCIC contest the priority of the IRS's interest, asserting they have a superior right to the Insurance Proceeds because the IRS expressly subordinated its liens to the VCLF and NCIC mortgage liens.

    For the reasons set forth below, the Court concludes summary judgment is proper, and the IRS has a superior right to the Insurance Proceeds as a matter of law. Therefore, the Court grants the IRS's motion for summary judgment and denies VCLF and NCIC's joint cross-motion for summary judgment.

1

## JURISDICTION

This Court has jurisdiction over this adversary proceeding, and each of the motions for summary judgment, pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered on June 22, 2012. This a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(K). The Remaining Parties have consented to this Court's authority to enter a final judgment determining their respective rights in the Insurance Proceeds in this interpleader action (see doc. # 41).

## PROCEDURAL HISTORY

The Chapter 7 case trustee (the "Trustee") commenced the instant adversary proceeding on September 12, 2019 and filed an amended complaint on October 11, 2019 (doc. # 4, the "Amended Complaint"). The Trustee obtained a Clerk's Entry of Default against Defendants Berton R. Frye, Virginia Frye, and Northeastern Vermont Developmental Association, Inc. (collectively, the "Default Defendants"), on February 4, 2020 (doc. # 30).[1] On April 8, 2020, the Court granted the Trustee's motion for a default judgment against the Default Defendants (doc. # 38, the "Default Judgment"). In the Default Judgment, the Court determined the Default Defendants had no claim or interest in the Insurance Proceeds and barred them from asserting any claim against the Trustee relating to, or arising out of, the Insurance Proceeds or this proceeding.

On May 12, 2020, the Court entered a judgment and order granting judgment in favor of the Trustee on five of the six prayers for relief in the Amended Complaint, dismissing the Trustee from the proceeding with prejudice, and directing the Trustee to deposit the Insurance Proceeds into the Court's registry pending adjudication of the Remaining Parties' claims to the Insurance Proceeds (doc. # 47). The Trustee subsequently deposited the Insurance Proceeds in the amount of $72,871.87 into the Court's registry (doc. # 50).

Pursuant to the Court's scheduling order (doc. # 41), the Remaining Parties timely filed a stipulation of facts (doc. # 49), the IRS filed a motion for summary judgment (doc. # 51), NCIC and VCLF (together, the "Bank Lienholders") filed a joint cross-motion for summary judgment (doc. # 52), and the IRS and Joint Bank Lienholders both filed objections and replies to the pending motions (doc. ## 53–56). The cross-motions for summary judgment were fully submitted as of June 20, 2020.

## ISSUE PRESENTED

The sole issue presented in these interpleader cross-motions for summary judgment is whether the IRS or the Joint Bank Lienholders holds a superior interest in the Insurance Proceeds.

---

[1] On March 31, 2020, the Debtors' attorney filed a copy of a death certificate verifying Berton R. Frye had died on March 15, 2020. (Case # 15-10242, doc. # 235-1.)

2

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Jackson v. Fed. Express, 766 F.3d 189, 193–94 (2d Cir. 2014). "A genuine issue exists – and summary judgment is therefore improper – where the evidence is such that a reasonable jury could decide in the non-movant's favor." Brandon v. Kinter, 938 F.3d 21, 31 (2d Cir. 2019) (citation and quotation marks omitted). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1985) (citation omitted). "The court construes all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in [that party's] favor." Amore v. Novarro, 624 F.3d 522, 529 (2d Cir. 2010) (citing LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005)); see also Burns v. Martuscello, 890 F.3d 77, 83 (2d Cir. 2018). However, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment[.]" Flores v. United States, 885 F.3d 119 (2d Cir. 2018) (quoting Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996)).

## UNDISPUTED MATERIAL FACTS

The Court finds the following facts to be undisputed and material to the outcome of these cross-motions for summary judgment (each, a "UMF"):

1. This dispute involves a priority determination of the Remaining Parties' interests in the Insurance Proceeds in the amount of $72,871.87,[2] which resulted from a fire that occurred on or around May 20, 2014, at the Debtors' former residence, 1076 Oneida Road, Danville, VT (the "Oneida Property"). (Doc. # 49, ¶ 1; doc. # 50; doc. # 51, p. 2, ¶ 1; doc. # 54.)

2. Community National Bank ("CNB") held a first mortgage on the Oneida Property. Pursuant to the mortgage document with CNB, the Debtors were required to maintain insurance on the Oneida Property. (Doc. # 49, ¶ 2(a); case # 15-10242, claim # 14-1.)

3. The Joint Bank Lienholders held second mortgages on the Oneida Property and on commercial parcels owned by the Debtors. Pursuant to the mortgage documents with the Joint Bank Lienholders, the Debtors were required to maintain insurance on the Oneida Property. (Doc. # 49, ¶ 2(b); case # 15-10242, claim ## 19-1, 20-1.)

4. The IRS had numerous federal tax liens against the Debtors for various outstanding federal tax liabilities. The Debtors' tax liability exceeds the amount of the Insurance Proceeds; their joint 2004 federal income tax liability as of the petition date was $92,976.58. The IRS filed a secured claim in the amount of $124,050, based on some of those liabilities, an unsecured priority claim in the amount of $92,340.30, and a general unsecured claim in the amount of $238,005.76. (Doc. # 49, ¶ 3; doc. # 51, p. 2, ¶¶ 1–3; doc. # 54; case # 15-10242, claim # 5-3.)

---

[2] This amount is composed of insurance proceeds in the amount of $80,000, minus the Trustee's approved fees and expenses in the amount of $7,128.13. (Doc. # 44; doc. # 47, p. 4; doc. # 49, ¶ 1.)

3

5. At the time the Joint Bank Lienholders made the loans to the Debtors that resulted in the creation of their liens, the IRS agreed to subordinate its federal tax liens to that of the Joint Bank Lienholders on all of the Debtors' real estate and on certain commercial equipment, in exchange for $120,000. The Joint Bank Lienholders each filed a secured claim in the amount of $81,000. (Doc. # 49, ¶¶ 2(c), (f); doc. # 49-1; case # 15-10242, claim ## 19-1, 20-1.)

6. With respect to the buildings and real estate,[3] the Joint Bank Lienholders and the IRS had perfected liens against the Oneida Property prior to the fire, with outstanding balances in excess of the amount of the Insurance Proceeds, in the following order of priority: VCLF, NCIC, and the IRS federal tax liens. (Doc. # 49, ¶ 4; doc. # 51, p. 2, ¶ 1; doc. # 54.)

7. In or around January 2014, the Debtors took out a homeowner's insurance policy on the Oneida Property, issued by Certain Underwriters at Lloyd's London Subscribing Severally to Policy No. WSH108007 ("Underwriters"). The insurance policy provided for coverage of up to $225,000 for the dwelling, $112,500 for personal property, and $45,000 for loss of use. The insurance policy listed one mortgagee, CNB. (Doc. # 49, ¶¶ 7–9, 11.)

8. On or about May 20, 2014, the Oneida Property was destroyed in a fire, and this Court approved an application for a public adjuster in connection with the fire. (Doc. # 49, ¶ 10.)

9. On October 24, 2014, Underwriters brought a declaratory judgment action against the Debtors and CNB in the United States District Court for the District of Vermont (5:14-cv-227) in relation to an insurance coverage dispute regarding the Debtors' insurance policy. That litigation was resolved through a settlement in December 2015, resulting in a payment of $80,000 to the Debtors. (Doc. # 49, ¶¶ 11–12, 14; case # 15-10242, doc. # 107.)

10. On May 20, 2015, the Debtors filed a Chapter 13 bankruptcy petition in this Court, within which this adversary proceeding was brought; the case was converted to Chapter 7 on February 11, 2016, and the Trustee was appointed. The Court then directed that the $80,000 in settlement proceeds be delivered to the Trustee. (Doc. # 49, ¶¶ 13, 15; case # 15-10242, doc. ## 1, 135, 146; see also case # 15-10242, doc. # 156.)

11. On June 17, 2015, this Court entered an order granting relief from stay to CNB and to all junior lienholders, including the Joint Bank Lienholders, to permit them to pursue pending foreclosure actions against the Debtors' properties, including the Oneida Property, in state court. The Debtors and the Joint Bank Lienholders entered into a settlement agreement in the state court foreclosure actions in November 2017, whereby they stipulated, inter alia, that the Joint Bank Lienholders would preserve, and could pursue, their claims against the Insurance Proceeds. (Doc. # 49, ¶¶ 2(d), (e); case # 15-10242, doc. # 34.)

12. On October 12, 2015, an attorney for the Joint Bank Lienholders confirmed in writing his earlier notification to an attorney for Underwriters that the Joint Bank Lienholders claimed an equitable lien on the insurance proceeds arising from their respective mortgages. (Doc. # 52, p. 2, ¶ 1; doc. # 52-1; doc. # 53.)

## DISCUSSION

The IRS seeks summary judgment that it has valid federal tax liens that attach to the Insurance Proceeds and those federal tax liens are superior to any interest the Joint Bank Lienholders may have in the Insurance Proceeds. The Joint Bank Lienholders seek summary judgment that they have a perfected

---

[3] The Remaining Parties modified this stipulated fact with the caveat that it is "not intended to address whether the liens on the real estate extend to the insurance proceeds at issue here or resolve the priority dispute between the parties over the insurance proceeds." (Doc. # 49, ¶ 4(a).)

4

claim against the Insurance Proceeds that has priority over the IRS.

### A. The IRS' federal tax liens attached to the Insurance Proceeds.

In its summary judgment motion, the IRS first argues the federal tax liens attached to the Insurance Proceeds (doc. # 51, pp. 3–5). The Joint Bank Lienholders do not dispute this assertion in their opposition papers (see doc. # 54).

Federal tax liens arise and attach "upon all property and rights to property, whether real or personal[.]" 26 U.S.C. § 6321. This includes the taxpayer's "interest in future proceeds of an insurance policy." United States v. Colby Academy, 524 F. Supp. 931, 933 (E.D.N.Y. 1981). A federal tax lien is "effective upon assessment against all persons, even in the absence of recordation of the lien." Don King Prods. v. Thomas, 945 F.2d 529, 533 (2d Cir. 1991).

Here, there is no dispute the Debtors were jointly liable for federal taxes in excess of the Insurance Proceeds (UMF ¶ 4). Their joint 2004 federal income tax liability was $92,976.58 as of the petition date, and the Insurance Proceeds total $72,871.87 (UMF ¶¶ 1, 4). Accordingly, on this issue the Court finds there are no material facts in dispute and summary judgment is proper. The Court concludes that, as a matter of law, a federal tax lien arose and attached upon all of the Debtors' property and rights to property, including their interest in the Insurance Proceeds, as of the date of each assessment.

### B. The IRS has priority over the Joint Bank Lienholders' claim to the Insurance Proceeds.

The IRS argues in its summary judgment motion that its federal tax liens have priority over the Joint Bank Lienholders' claim to the Insurance Proceeds for two reasons: (i) the Joint Bank Lienholders have only an equitable lien and equitable liens cannot have priority over federal tax liens; and (ii) the Joint Bank Lienholders' claim become choate no earlier than the same time as the federal tax liens.

The Joint Bank Lienholders reject the IRS' position and assert their claim has priority over the federal tax liens on two grounds: First, they allege they hold an equitable lien that gives them a direct legal ownership interest in the Insurance Proceeds, notwithstanding that they were not named as loss payees in the insurance policy. Second, they argue their equitable lien was choate prior to the attachment of the IRS lien or, alternatively, their lien is statutorily excepted from the choateness requirement.

#### i. What is the nature of the Joint Bank Lienholders' claim to the Insurance Proceeds?

There is no dispute the Joint Bank Lienholders have an equitable lien against the Insurance Proceeds as proceeds of the real estate to which their liens had attached.

> It is a well-established rule that if the mortgagor is bound by covenant or otherwise to insure the mortgaged premises for the better security of the mortgagee, the latter will have an equitable lien upon the money due on a policy taken out by the mortgagor, to the extent of the mortgagee's interest in the property destroyed, even though the policy contains no mortgage clause. This equitable lien arises solely from the unperformed contract to protect, the theory being that since equity regards

5

> as done that which ought to have been done, if the mortgagor, having so covenanted, fails to make the insurance payable to the mortgagee or to assign it, the fund arising therefrom is within the operation of the maxim.

54A AM JUR 2D MORTGAGES § 233.

It is also undisputed that the Joint Bank Lienholders each had a validly perfected mortgage, each of the mortgages required the Debtors to maintain an insurance policy that protected the Joint Bank Lienholders' interests, and the insurance policy the Debtors obtained did not name or protect either of the Joint Bank Lienholders as a mortgagee or loss payee (UMF ¶¶ 3, 6, 7). Based on these undisputed facts, the Court finds summary judgment is proper on this issue and concludes, as a matter of law, that the Joint Bank Lienholders have an equitable lien against the Insurance Proceeds.

The salient dispute in this case centers on the reach and priority of the Joint Bank Lienholders' equitable lien. The Joint Bank Lienholders assert their equitable lien amounts to a direct ownership interest in the Insurance Proceeds that affords them the same priority with respect to the Insurance Proceeds that they had with respect to the Oneida Property. They argue their interest in the Debtors' insurance policy was identical to CNB's interest, even though CNB was a named loss payee, and the Joint Bank Lienholders were not. Citing Lakeshore Bank & Trust Co. v. United Farm Bureau Mut. Ins. Co., 474 N.E.2d 1024 (Ct. App. In. 1985), in support of their position, the Joint Bank Lienholders contend that since the Debtors were contractually bound to name them on the insurance policy, as soon as the Joint Bank Lienholders put Underwriters on notice of their interest in the policy (see UMF ¶ 12), Underwriters was obligated to treat them as parties entitled to payment of the Insurance Proceeds.

The IRS contends Lakeshore is inapplicable because it did not involve a priority dispute between creditors, did not address the ownership of the mortgagee and, most importantly, did not result in a determination that the mortgagee had any ownership interest in the funds beyond an equitable lien. Rather, the matter before that court was whether an insurance company wrongfully transferred insurance proceeds to a mortgagor despite having notice of the mortgagee's equitable lien interest. The Lakeshore court held the insurer had a duty to account to the mortgagee for the funds by not transferring them until the rights of the parties had been settled. To the extent Lakeshore applies here, the IRS posits that Underwriters fulfilled the duty articulated in that case by turning over the proceeds to the Trustee (see UMF ¶ 10; see also case # 15-10242, doc. # 156).

The Court finds the IRS' reading of this case to be sound. Lakeshore does not provide legal support for the Joint Bank Lienholders' contention that they have more than an equitable lien in the Insurance Proceeds. This does not end the Court's inquiry, however, as this Court must also determine which criteria control in discerning the priority of the competing liens.

### ii. When did the Joint Bank Lienholders' claim become choate?

The Remaining Parties disagree about when the Joint Bank Lienholders' claim to the Insurance Proceeds became choate. The IRS' position is that the Joint Bank Lienholders' claim became choate no earlier than the same time as when the federal tax liens became choate, so the federal tax liens have priority under the simultaneous attachment rule. The Joint Bank Lienholders' position is their claim became choate as of the mortgage recordation date. In the alternative, the Joint Bank Lienholders argue their claim is statutorily excepted from the choateness requirement, pursuant to 26 U.S.C. § 6323(c). If either of those arguments prevail, the Joint Bank Lienholders' claims would have priority over the federal tax liens.

"The priority of a federal tax lien is a matter of federal law … [i]n determining whether the tax lien has priority over a competing lien or claim, it is necessary to look at two factors: (1) chronological priority and (2) compliance with the doctrine of choateness." United States v. 110-118 Riverside Tenants Corp., 886 F.2d 514, 518 (2d Cir. 1989) (citations omitted).

> [P]riority as a lienor is determined by the common law rule of "first in time is the first in right." Under that rule, a federal tax lien takes priority over competing liens unless the competing lien was choate, or fully established, prior to the attachment of the federal lien. Not only does a lienor's interest have to be first chronologically, but the interest must be choate to defeat the federal tax lien. **A choate lien is one in which the identity of the lienor, the property subject to the lien and the amount of the lien are established.** A lien that is "choate" has been described as a lien that is "specific and perfected" and for which "nothing more [need] be done."

Don King Prods. v. Thomas, 945 F.2d 529, 533–34 (2d Cir. 1991) (citations omitted, and emphasis added). In the event of simultaneous attachment, the federal tax lien is accorded priority. V.J. Processors, Inc. v. Fireman's Fund Ins. Cos., 679 F. Supp. 399, 401 (D. Vt. 1987) (citations omitted).

There is no dispute that (1) the IRS subordinated its federal tax liens to the liens of the Joint Bank Lienholders on all of the Debtors' real estate, including the Oneida Property; (2) prior to the destruction of the Oneida Property in a fire on May 20, 2014, the Joint Bank Lienholders and the IRS had perfected liens against the Oneida Property in the following priority: VCLF, then NCIC, and then the IRS federal tax liens; and (3) the Debtors took out their insurance policy in January 2014, Underwriters commenced its insurance coverage dispute action on October 24, 2014, and that litigation was settled in December 2015, resulting in the $80,000 in settlement proceeds (UMF ¶¶ 5–10). Since the res at issue here is not the Oneida Property, but rather the Insurance Proceeds, the Court turns to the question of when the Joint Bank Lienholders' equitable lien became choate as to the Insurance Proceeds.

The IRS argues the Joint Bank Lienholders' claim did not become choate until December 2015, when the insurance coverage dispute litigation was settled, because that was when the property subject to the Joint Bank Lienholders' equitable lien, i.e., the Insurance Proceeds, and the amount of the

7

equitable lien, were established. The IRS further contends that even if the Insurance Proceeds were deemed to have come into existence as early as May 20, 2014, when the Oneida Property was destroyed by fire, and before which there was no insurance claim that could have possibly been encumbered by an equitable lien of the Joint Bank Lienholders, the federal tax liens had either (i) already attached to the Debtors' interest in the insurance policy or (ii) attached simultaneously with the Joint Bank Lienholders' equitable lien on that date. See MDC Leasing Corp. v. New York Prop. Ins. Underwriting Ass'n, 450 F. Supp. 179, 181 (S.D.N.Y. 1978) (assignment of unfixed insurance proceeds was equitable interest that became legal and choate once there was a judgment or appropriation of proceeds in favor of assignor or no earlier than when proof of loss was filed and proceeds came into existence, and federal tax liens attached before proceeds came into existence or no later than when proceeds came into existence); see also United States v. Colby Acad., 524 F. Supp. 931, 934 (E.D.N.Y. 1981) (assignment of unfixed insurance proceeds was equitable interest that became legal and choate once there was a judgment or appropriation of proceeds in favor of assignor, and ripening of equitable lien into legal lien did not relate back to date of execution of the original assignment).

Citing PPG Industries, Inc. v. Hartford Fire Ins. Co., 531 F.2d 58 (2d Cir. 1976) to refute the IRS' position, the Joint Bank Lienholders argue the Insurance Proceeds are merely their real estate collateral in another form, and they have the same priority perfected lien against the Insurance Proceeds that recompenses the loss of that collateral. Since they properly recorded their mortgage and the IRS executed a subordination agreement in their favor, the Joint Bank Lienholders declare there was nothing else they were required to do in order to have priority over the IRS, in either the Oneida Property or its proceeds, i.e., the Insurance Proceeds. Thus, since a lien is choate when "there is nothing more that needs to be done to perfect it[,]" V.J. Processors, Inc., 679 F. Supp. at 401, and since mortgage liens in Vermont are perfected by recordation with the land records, 27 V.S.A. § 342, the Joint Bank Lienholders maintain their lien on the Insurance Proceeds was choate as of the mortgage recordation date.

The Joint Bank Lienholders' reliance on PPG Industries is unavailing, however, because the facts of that case are markedly distinct from those before this Court. In PPG Industries, the creditor had a security interest in the debtor's inventory and equipment that was governed by Article 9 of the Uniform Commercial Code. The Second Circuit construed the version of U.C.C. § 9-306 then in effect to grant the creditor a security interest in the proceeds of the insurance policy at issue. PPG Industries, 531 F.3d at 61. The court found that, although the proceeds did not come into existence until a judgment was obtained against the insurance company, since the creditor's original security interest was in the debtor's inventory and equipment and, when that property was destroyed, the security interest continued

8

under U.C.C. § 9-306(1) in the insurance policy and then in the proceeds. The court concluded the creditor's security interest had priority over the federal tax lien that would have clearly been subordinate to the creditor's security interest in the original collateral. Id. at 62–63. Here, unlike in PPG Industries, the original collateral at issue is real property, not personal property, and Article 9 of the Uniform Commercial Code does not apply. See 9A V.S.A. § 9-109. As this Court found above, the Joint Bank Lienholders have established no legal basis for their contention that they have more than an equitable lien in the Insurance Proceeds (see § B.i, supra).[4]

This Court need not determine the exact date when the Joint Bank Lienholders' equitable lien against the Insurance Proceeds became choate. The Court has already found the federal tax liens arose as of the date of each assessment and attached upon the creation of the Debtors' interest in the Insurance Proceeds (see § A, supra), and the taxes were assessed as early as 2004, in an amount exceeding the Insurance Proceeds (UMF ¶ 4). The Debtors' interest in the Insurance Proceeds could not have been established any later than the date the property subject to the Joint Bank Lienholders' equitable lien, i.e., the Insurance Proceeds, was established in 2015. Even if the Court found this date to be as early as January 2014, when the Debtors purchased the insurance policy (UMF ¶ 7), the IRS' federal tax liens would have attached to those proceeds no later than simultaneously with the Joint Bank Lienholders' equitable lien. Hence, unless the Joint Bank Lienholders are statutorily exempted from the choateness requirement, the federal tax liens have priority. See V.J. Processors, 679 F. Supp. at 401.

The Joint Bank Lienholders' alternative argument is that the nature of their claim against the Insurance Proceeds exempts it from the choateness requirement, pursuant to 26 U.S.C. § 6323(c). That statute provides, in relevant part

> (c) Protection for certain commercial transactions financing agreements, etc.
>
> > (1) In general. To the extent provided in this subsection, even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing but which—
> >
> > > (A) is in qualified property covered by the terms of a written agreement entered into before tax lien filing and constituting—
> > >
> > > > (i) a commercial transactions financing agreement,
> >
> > …
> > (2) Commercial transactions financing agreement. For purposes of this subsection—

---

[4] To the extent the Joint Bank Lienholders argue the IRS subordinated its federal tax liens on future insurance claims under the subordination agreement, the Court finds this argument to be without merit. It is undisputed that the subordination agreement was limited to real estate and certain commercial equipment (UMF ¶ 5).

9

> (A) Definition. The term "commercial transactions financing agreement" means an agreement (entered into by a person in the course of his trade or business)—
>
>> (i) to make loans to the taxpayer to be secured by commercial financing security acquired by the taxpayer in the ordinary course of his trade or business, or
>>
>> …
>>
>> but such an agreement shall be treated as coming within the term only to the extent that such loan or purchase is made before the 46th day after the date of tax lien filing or (if earlier) before the lender or purchaser had actual notice or knowledge of such tax lien filing.
>
> (B) Limitation on Qualified Property. The term "qualified property", when used with respect to a commercial transactions financing agreement, includes only commercial financing security acquired by the taxpayer before the 46th day after the date of tax lien filing.
>
> (C) Commercial Financing Security Defined. The term "commercial financing security" means (i) paper of a kind ordinarily arising in commercial transactions, (ii) accounts receivable, (iii) mortgages on real property, and (iv) inventory.
>
> …

26 U.S.C. § 6323(c).

The Joint Bank Lienholders argue that because "commercial financing security" includes "mortgages under real property" pursuant to 26 U.S.C. § 6323(c)(2)(C)(iii), their security interest in the Oneida Property is a "commercial transactions financing agreement" under 26 U.S.C. § 6323(c)(2)(A), and is thus excepted from the "first in time" priority accorded to federal tax liens. However, as the IRS correctly observes, mortgages on residential real property are not themselves "commercial transactions financing agreements" under 26 U.S.C. § 6323(c). Rather, mortgages on real estate are a type of security a taxpayer may own that may be used to secure a loan to that taxpayer under a commercial transactions financing agreement, under 26 U.S.C. § 6323(c)(2)(A)(i) and (C)(iii). The term "commercial financing security" applies to a mortgage on real estate "if the taxpayer has an interest in the mortgage as a mortgagee or assignee" but does not include "a mortgage where the taxpayer is the mortgagor or realty owned by him." 26 C.F.R. § 301.6323(c)-1. Here, the Joint Bank Lienholders made the loans to the Debtors and held the mortgages on the Oneida Property (UMF ¶¶ 3, 5). Their argument fails as the Debtors were the mortgagors and 26 U.S.C. § 6323(c) does not apply.

While the statute does not offer relief to the non-governmental creditors in this case, from an equitable perspective there is something troubling about this commercial transaction, in which the facts indicate (i) the IRS subordinated its interest in the real property to induce the Joint Bank Lienholders to

10

make mortgage loans to debtors in financial distress, (ii) the Joint Bank Lienholders paid $120,000 in consideration of that subordination, (iii) the Joint Bank Lienholders each then made a mortgage loan, apparently in reliance on the subordination agreement, and (iv) when the property that was collateral for their loans was destroyed, the IRS declared its subordination agreement did not apply to the proceeds of the collateral and proclaimed its lien usurped the Joint Bank Lienholders' interest in those proceeds. This seems inconsistent with the Remaining Parties' expectations and intentions, and creates a result dependent on whether the Oneida Property was reduced to proceeds or was in existence at the time the Remaining Parties sought to enforce their respective rights against it, and whether the Debtors fulfilled their contractual duties to the Joint Bank Lienholders. The Joint Bank Lienholders ask this Court to do equity by turning over the Insurance Proceeds to them. The IRS responds that federal law controls and establishes very clear criteria, which the Joint Bank Lienholders simply have not met, in order to have priority over the IRS' federal tax liens.

The material facts with respect to the choateness dimension of the issue are not in dispute, and therefore summary judgment is proper. Since the Joint Bank Lienholders have not demonstrated they hold a direct ownership interest in the Insurance Proceeds, they had a choate interest in the Insurance Proceeds prior to the IRS, or they are statutorily exempted from the choateness requirement, the Court concludes that, as a matter of law, the IRS' federal tax liens have priority over the Joint Bank Lienholders' claim to the Insurance Proceeds.

## **CONCLUSION**

As a threshold matter, the Court finds none of the material facts are in dispute and therefore it determines summary judgment is proper.

On the merits, the foregoing analysis and conclusions lead this Court to two conflicting determinations. First, the equities decidedly favor the Joint Bank Lienholders because the undisputed facts affirm they (a) took all necessary steps to perfect their security interests in the Oneida Property, (b) paid the IRS for a subordination of its lien on the Oneida Property so the Joint Bank Lienholders would have priority over the IRS in the real estate that served as their collateral, (c) required in the mortgage agreement that the Debtors name them as loss payees on the insurance policy protecting the value of their real property collateral, and (d) would have had priority over the IRS if the Oneida Property collateral had not been destroyed. Second, the controlling federal law is clear, and since the collateral was destroyed by fire and the Debtors failed to name the Joint Bank Lienholders as loss payees on their insurance policy, the Joint Bank Lienholders' interest in the proceeds was not choate prior to the IRS' interest therein, and they are not exempt from the choateness criterion. Hence, the Court concludes IRS' federal tax liens have priority over the Joint Bank Lienholders' equitable lien in the Insurance Proceeds.

Although this seems an inequitable outcome, it is the one required by the law.[5]

Accordingly, the Court grants the IRS' motion for summary judgment and denies the Joint Bank Lienholders' cross-motion for summary judgment.[6]

This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

August 31, 2020  
Burlington, Vermont

_____  
Colleen A. Brown  
United States Bankruptcy Judge

---

[5] This Court is not the only one to find the application of this statute can lead to inequitable results. See United States v. Ripa, 323 F.3d 73, 86 (2d Cir. 2003) ("With our conclusion that the government's claim to the fund prevails, our task is complete. **We do not doubt that the question of whether it is right and just for the government to obtain the money is an important one. It is, however, a question for the IRS, the Tax Court, and Congress. It is not before us on this appeal**.") (emphasis added); see also Sanchez v. United States, 696 F.2d 213, 214 (2d Cir. 1982) ("The law of New York clearly provides the government with a priority that, **leaving sympathy aside, we are obliged to effectuate**.") (emphasis added).

[6] The Court has considered all of the Remaining Parties' arguments and, to the extent any arguments are not specifically addressed in this memorandum it is because the Court found them superfluous, in light of the ruling herein, or without merit.